UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────

ARCHIE PRICE, 02-B-2411,

        Petitioner,

     -v-                       08-CV-0268(MAT)
                                        **ORDER**
ROBERT H. KIRKPATRICK,

        Respondent.
────────────────────────────

## I.   Introduction

*Pro se* petitioner Archie L. Price ("petitioner") has filed a
timely petition for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 challenging his conviction in Erie County Supreme Court of
two counts of Murder in the Second Degree (N.Y. Penal L.
§ 125.25(1)) and one count of Criminal Possession of a Weapon in
the Second Degree (former N.Y. Penal L. § 265.03(2)). Petitioner's
judgment of conviction was entered on October 11, 2002, following
a jury trial before Justice Ronald H. Tills. He was subsequently
sentenced to an aggregate term of imprisonment of forty years to
life.

## II.  Factual Background and Procedural History

Petitioner's conviction stems from the fatal shooting of
Melvin Payne ("Payne") and Darnielle Butler ("Butler") on July 5,
2001 on Buffalo's east side.

The day of the murders, petitioner, then 17 years-old, was
involved in altercation on Stevens and Northland Avenues in the

City of Buffalo among several young men. During the melee, petitioner was struck in the head or jaw and was knocked to the ground. Petitioner then ran to 198 Stevens Avenue, where his girlfriend, Ashley Williams ("Williams"), was visiting a friend. He told Williams that he was "about to go down there and light the block up." T. 67-68.[1] Despite Williams' pleas for petitioner not to return to the scene of the fight, petitioner went anyway. T. 70. When petitioner returned to the house, he was wearing a tan shirt, jeans, and boots. He had his hands under his shirt as he approached Williams and another friend, Akira Reid[2] ("Reid"). Petitioner entered 198 Stevens and changed into a light blue jersey and blue sneakers. He told Williams and the others to "be quiet." T. 72-74.

Reid testified that a few days following the shooting, she returned to 198 Stevens and while she was there, she received a phone call from petitioner, who asked her to "go get the gun out of Erika's room, inside of the vent." T. 116. She described the gun as black and that it "looked like it was broke." T. 117. Reid then called her friend Roderick Arrington ("RaRa") and asked him to "come and get [the gun] out the house." T. 119. RaRa instructed Reid that "we better not tell anybody what Bonkers did." T. 159.

---

[1] Citations to "T.__" refer to the trial transcript; citations to "S.__" refer to the sentencing transcript.

[2] Reid's cousin, Erika Bozeman ("Bozeman") lived at the house at 198 Stevens.

Eyewitness Robert Daniel ("Daniel") also testified at petitioner's trial. On July 5, 2001, Daniel observed a large group of people fighting in the street around Northland and Stevens Avenues. T. 177. He saw petitioner get hit in the jaw, and then everyone "started scattering." T. 178. Several minutes later, Butler pulled up in his car and stopped at the corner of Stevens and Northland. Payne stood at Butler's car, talking with Butler. T. 181. Moments later, Daniel heard gunfire and saw Payne fall in the middle of the street beside Butler's car. He then saw Butler's car go into reverse and hit a tree. T. 184-185.

Payne was pronounced dead at the scene and Butler was pronounced dead the following day. Eight shell casings were found at the corner of a fence and a driveway located at 182 Stevens, and bullet fragments were found in the street near Payne's body. T. 252, 266, 307. Butler's car had a bullet hole in the front windshield. T. 268. The gun that was used in the shooting was not recovered.

Approximately one month after the shooting, petitioner spoke with homicide detectives from the Buffalo Police Department. After several denials of his involvement in the shooting, petitioner signed a statement indicating that he stood near a fence on Stevens Avenue, closed his eyes, and fired a gun multiple times. He said he had shot the victims because "someone was shooting at [him] and [he] was scared for [his] life." T. 500-502. Petitioner also told

police that following the shooting, he went to 198 Stevens, changed his clothes, and put the gun in a heating vent. T. 504-505. He concluded his statement with, "I did not mean to do it. I did not mean to shoot them people. It was an accident. I wish I could change what happened." T. 505.

Petitioner was found guilty of two counts of intentional murder and one count of criminal possession of a weapon. He was sentenced to consecutive terms of imprisonment of twenty years to life for the murder convictions, along with a concurrent term of nine years, determinate, plus five years of post-release supervision for the weapons possession. T. 777, S. 27-28.

Through counsel, petitioner filed a brief to the Appellate Division, Fourth Department, raising the following issues for appeal: (1) the imposition of consecutive sentences was illegal; (2) the evidence was legally insufficient to support the convictions for intentional murder; (3) prosecutorial misconduct/court hostility; and (4) ineffective assistance of trial counsel. See Respondent's Exhibits ("Ex.") B. The Fourth Department unanimously affirmed the judgment of conviction. People v. Price, 35 A.D.3d 1230 (4th Dept. 2006); lv. denied, 8 N.Y. 926 (2007).

Petitioner then filed a motion to vacate the judgment pursuant to N.Y. Crim. Proc. L. ("C.P.L.") § 440.10, alleging: (1) prosecutorial misconduct; (2) denial of his right to counsel at

his arrest; (3) ineffective assistance of appellate counsel; and (4) excessive sentence/repugnant verdict. <u>See</u> 440.10 Mot. dated 10/6/2007 (Ex. D). The state court denied petitioner's motion on December 10, 2007. <u>See</u> Order of the Sup. Ct., Erie County (J. Michalski), No. 01-1874-001, dated 12/10/2007 (Ex. D). Petitioner did not seek leave to appeal that decision in the Appellate Division.

The instant habeas petition followed (Dkt. #1), in which petitioner raises the following grounds for relief: (1) petitioner's statements to police were obtained in violation of his right to counsel; (2) ineffective assistance of trial counsel; (3) prosecutorial misconduct; (4) the consecutive sentences are illegal; and (5) insufficiency of the evidence to support the conviction. Petition ("Pet.") ¶ 22(A)-(D). For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's

application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### 2.    Exhaustion Requirement and Procedural Default

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ...." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838,

843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been fairly presented to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations omitted). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a

fundamental miscarriage of justice. <u>See</u> <u>Wainwright v. Sykes</u>, 433
U.S. 72, 87-91 (1977).

### 3. Adequate and Independent State Ground Doctrine

It is a well-settled aspect of federal habeas jurisprudence
that if "a state prisoner has defaulted his federal claims in state
court pursuant to an independent and adequate state procedural
rule, federal habeas review of the claims is barred" absent (1) a
showing of cause for the default and actual prejudice attributable
thereto, or (2) a showing that failure to consider the claims will
result in a "fundamental miscarriage of justice." <u>Coleman v.
Thompson</u>, 501 U.S. 722, 750 (1991). A state ground will create
procedural default sufficient to bar habeas review if the state
ground first was an "independent" basis for the decision; this
means that "the last state court rendering a judgment in the case
clearly and expressly state[d] that its judgment rests on a state
procedural bar." In addition, the state procedural bar must be
"adequate" to support the judgment-that is, it must be based on a
rule that is "'firmly established and regularly followed' by the
state in question." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999)
(quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a
claim is procedurally barred then the federal habeas court may not
review it, even if the state court also rejected the claim on the
merits in the alternative. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264

n.10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

**B.    Merits of the Petition**

**1.    Fifth Amendment Violation**

Petitioner first contends that his statements to police were the product of custodial interrogation and obtained in violation of his right to counsel. Pet. ¶ 22(A).Petitioner raised this claim in a motion for *vacatur* in Erie County Supreme Court, which rejected the argument pursuant to C.P.L. § 440.10(3)(b).[3] <u>See</u> Ex. D. Because petitioner did not seek leave to appeal that decision, the instant claim is unexhausted. <u>See</u> <u>Pesina v. Johnson</u>, 913 F.2d 53 (2d Cir. 1990) ("[f]ailure to seek leave to appeal the denial of a § 440.10 motion to the Appellate Division constitutes failure to exhaust the claims raised in that motion.").

Ordinarily, a defendant has thirty days to apply for leave to appeal from a decision denying a section 440.10 motion. <u>See</u> C.P.L. § 460.10(4)(a). The Appellate Division can, however, extend this period for not more than one year after the expiration of the

_____

[3] C.P.L. § 440.10(3)(b) reads, "the court may deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon a prior motion or proceeding in a court of this state, other than an appeal from the judgment, or upon a motion or proceeding in a federal court; unless since the time of such determination there has been a retroactively effective change in the law controlling such issue."

thirty-day period. C.P.L. § 460.30. In this case, petitioner's § 440.10 motion was denied on December 10, 2007, approximately two and-a-half years ago. It would thus be futile for petitioner to seek leave to appeal from the denial of his § 440.10 motion. Accordingly, petitioner's claim should be deemed exhausted but procedurally barred, as he no longer has a state court forum in which to raise his Fifth Amendment claim. See Rodriguez v. Ercole, 08 Civ.2074, 2008 WL 4701043, at *9 (S.D.N.Y. Oct.24, 2008) ("Since petitioner can no longer move for permission to appeal from the denial of his CPL § 440.10 motion ... his ... claim is procedurally barred."); Edmee v. Coxsackie Correctional Facility, Nos. 09-Civ-3940 (BMC), 09-Civ-3939 (BMC), 2009 WL 3318790, *2 (E.D.N.Y. Oct. 14, 2009) ("The failure to timely appeal the denial of petitioner's § 440.10 motion means that the claim is not only unexhausted, but procedurally barred under state law because it is too late to take that appeal and a state court would dismiss it on that ground."); DeVito v. Racette, No. CV-91-2331 (CPS), 1992 WL 198150, *3 (E.D.N.Y. Aug. 3, 1992) ("Petitioner's failure to abide by these state time limits suggests that he has inadvertently exhausted his claim: if the state courts will not hear his claim because of their time limits, then the state affords him no further opportunity for relief. This reasoning would not help petitioner, however, because, to the extent that the Court considered his application to be exhausted, the manner in which it became

exhausted would require the Court to conclude that it is also procedurally barred."); see generally, Grey v. Hoke, 933 F.2d at 120.

A finding of procedural default bars habeas review of the federal claim unless the petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a miscarriage of justice. Murray v. Carrier, 477 U.S. 478, 492 (1986); Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977). Petitioner has made no showing of the requisite cause and prejudice, nor has he demonstrated that the Court's failure to review the claim will result in a miscarriage of justice. This claim is therefore dismissed.

## 2. Ineffective Assistance of Counsel

Petitioner next contends that his trial attorneys were constitutionally ineffective because they were unprepared for trial. Pet. ¶ 22(B); Pet'r Mem. at 7. Petitioner has raised this claim for the first time in the instant petition and has therefore failed to exhaust this claim.

A habeas court may deny unexhausted claims on the merits despite petitioner's failure to exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b)(2). The majority of district courts in this circuit have followed a "patently frivolous" standard for denying unexhausted claims. Colorio v. Hornbeck, No. 05 CV 4984(NG) (VVP), 2009 WL 811588, at *3 (E.D.N.Y. Mar. 3, 2009) (citing Brown

v. State of New York, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005) (citing Naranjo v. Filion, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003) (collecting cases)) (footnote omitted)), while a minority of district courts have exercised § 2254(b)(2) discretionary review when "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim[.]" Hernandez v. Lord, No. 00-CIV-2306, 2000 WL 1010975, at *4 n.8 (S.D.N.Y. Jul. 21, 2000) (collecting and analyzing cases, internal quotation omitted). Another test that has been suggested in this Circuit is that unexhausted claims should be reviewed under a "heightened de novo standard." King v. Cunningham, 442 F.Supp.2d 171, 179 (S.D.N.Y. 2006). Regardless of the standard employed, petitioner's claim fails on the merits.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's

representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. Actions or omissions by counsel that "might be considered sound trial strategy" do not constitute ineffective assistance. Strickland, 466 U.S. at 689; see also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

In support of his argument, petitioner points to a pre-trial proceeding held on March 21, 2002, in which petitioner's defense team (consisting of three attorneys in private practice) appeared before the court to request additional time to prepare its defense. Specifically, the defense requested an additional 45 to 60 days to complete its investigation. See Mins dated 3/21/02 at 2-3. The three attorneys cited problems obtaining information from their investigator and from the prosecution. Id. at 3-12. Moreover, the defense team felt as though petitioner's case, one that involved a seventeen year-old defendant accused of a dual homicide, required more time and attention than a typical criminal case. Id. at 8-23. The trial court then granted an adjournment to July 9, 2002. Id. at 25. Aside from petitioner's bald assertion that his attorneys failed to prepare for trial, he has not demonstrated that any

member of his defense team was ineffective or unprepared. To the contrary, the defense sought and received an adjournment in order to thoroughly investigate and prepare a viable defense on petitioner's behalf. Moreover, the record indicates that petitioner's attorneys aptly represented petitioner in his defense and, overall, provided him with competent representation by filing the proper motions before and during trial, putting forth a cogent theory of defense, delivering articulate opening and closing statements, cross-examining the prosecution's witnesses, and making the appropriate objections throughout trial. Thus, petitioner cannot demonstrate that the conduct of his attorneys, either individually or collectively, was deficient within the meaning of Strickland. Habeas relief is therefore denied on this ground.

### 3. Prosecutorial Misconduct

Peittioner argues that the prosecutor committed misconduct by using petitioner's nickname, "Bonkers" at trial. Pet. ¶ 22(C). The Appellate Division held that petitioner was not denied a fair trial due to prosecutorial misconduct. Price, 35 A.D.3d at 1232.

Both the Second Circuit and the Supreme Court have "note[d] the narrow standard governing federal habeas corpus review of a petition brought by a state prisoner," which appropriately is "'the narrow one of due process, and not the broad exercise of supervisory power.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974));

accord, e.g., <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990). The Supreme Court accordingly has instructed federal habeas courts reviewing claims of prosecutorial misconduct brought by state petitioners to distinguish between the "ordinary trial error of a prosecutor and that sort of egregious misconduct ... amount[ing] to a denial of constitutional due process." <u>Donnelly</u>, 416 U.S. at 647-48 (citations omitted); <u>accord</u> <u>Floyd</u>, 907 F.2d at 353. <u>Donnelly</u>'s standard requires the federal habeas court to ask whether "'the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'" <u>Floyd</u>, 907 F.2d at 353 (quoting <u>Garofolo v. Coomb</u>, 804 F.2d 201, 206 (2d Cir. 1986) (citing <u>Donnelly</u>, 416 U.S. at 645 and, *inter alia*, <u>United States v. Modica</u>, 663 F.2d 1173 (2d Cir. 1981), <u>cert. denied</u>, 456 U.S. 989 (1982)).

Given the narrow scope of habeas review of prosecutorial misconduct claims, a habeas petitioner must show "that he suffered actual prejudice" because the prosecutor's comments had a substantial and injurious effect or influence on the jury's verdict. <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir. 1998). In making the determination of whether a defendant has suffered "actual prejudice" as a result of the prosecutorial misconduct, the Second Circuit has examined "'the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements.'" <u>Tankleff</u>, 135 F.2d at

252 (quoting <u>Floyd</u>, 907 F.2d at 355 (quoting <u>United States v.</u>
<u>Modica</u>, 663 F.2d at 1181)).

As it relates to the claim of prosecutorial misconduct,
petitioner avers that the prosecutor unfairly characterized the
petitioner as a sociopath by referring to him as "Bonkers".
Williams, petitioner's former girlfriend, testified that
petitioner's nickname was actually "Bunker" or "Bunkers", a
reference to Archie Bunker from the 1970's television show, "All in
the Family". T. 59-60, 78. The prosecutor nonetheless continued to
refer to petitioner as "Bonkers" throughout the trial.[4] Defense
counsel related in his summation that "although we never seem to
get over that hump, that my client's name is not Bonkers, it's
Bunkers, after Archie Bunker . . . when he was born that was a TV
program." T. 579.

First, the Court notes that the prosecutor did not misuse the
nickname Bonkers to negatively portray the petitioner or
characterize him as irrational or mentally unsound. <u>Compare</u>, <u>People</u>
<u>v. Santiago</u>, 255 A.D.2d 63 (1st Dept. 1999) (prosecution should not
have been permitted to present evidence that a defendant was known
as "Murder Mike" in light of the danger of undue prejudice and

---

[4] It is unclear what petitioner's actual alias is, although the
Appellate Division and New York Court of Appeals have referred to petitioner
as "Bonkers". <u>See</u> <u>Price</u>, 35 A.D.3d at 1230; <u>People v. Bonkers</u>, 8 N.Y.3d 919
(2007). The inconsistency in petitioner's nickname, however, was pervasive
throughout the trial. For example, in a statement to police, petitioner
apparently provided the name Bonkers. Other prosecution witnesses, acquainted
with petitioner, wavered between referring to him as Bonkers and Bunkers. T.
59, 119, 159, 423, 177. Defense counsel maintained that petitioner went by the
street name, Bunkers.

marginal relevance to witness identification). To the extent that the that the use of "Bonkers" was inappropriate, petitioner cannot establish actual prejudice in light of the overwhelming evidence against him. See infra III.B.5. Moreover, defense counsel elicited from the prosecution's witnesses that petitioner's nickname was indeed "Bunkers", and restated that fact during his summation argument. T. 59, 579. It thus cannot be said that the mispronunciation/con of petitioner's street name "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. at 181. The Court accordingly denies habeas relief on petitioner's claim of prosecutorial misconduct.

### 4. Illegal Sentence

Petitioner contends that his consecutive sentences are illegal because the offenses were committed through a single act. Pet. ¶ 22(D), Ground Four; see N.Y. Penal L. § 70.25(2). The Appellate Division held that petitioner failed to preserve the issue for appellate review. Price, 33 A.D.3d at 1231 (citing People v. Rice, 27 A.D.3d 1158 (2006) (citing C.P.L. § 470.05(2))).

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice

attributable thereto, or demonstrate that failure to consider the
federal claim will result in a fundamental miscarriage of justice."
Harris v. Reed, 489 U.S. 255, 262 (1989) (citations & internal
quotations omitted).

The Appellate Division's rejection of this claim is based on
petitioner's failure to comply with a state preservation rule was
an independent and adequate state ground which bars federal habeas
review of the claim. The Appellate Division's invocation of the
"contemporaneous objection" rule, is rooted in C.P.L. § 470.05(2)[5].
Both the Supreme Court and the Second Circuit have held that the
failure to object at trial when required by a state's
contemporaneous objection rule, such as C.P.L. § 470.05, is an
adequate and independent state ground. E.g., Wainwright v. Sykes,
433 U.S. 72, 86, 90 (1977) (contemporaneous objection rule is an
adequate and independent state ground); Garcia v. Lewis, 188 F.3d
71, 79 (2d Cir. 1999) ("We have observed and deferred to New York's
consistent application of its contemporaneous objection rules
....") (citations omitted). Because there is an adequate and

_____

[5] "For purposes of appeal, a question of law with respect to a ruling or
instruction of a criminal court during a trial or proceeding is presented when
a protest thereto was registered, by the party claiming error, at the time of
such ruling or instruction or at any subsequent time when the court had an
opportunity of effectively changing the same. Such protest need not be in the
form of an "exception" but is sufficient if the party made his position with
respect to the ruling or instruction known to the court, or if in reponse
[sic] to a protest by a party, the court expressly decided the question raised
on appeal. In addition, a party who without success has either expressly or
impliedly sought or requested a particular ruling or instruction, is deemed to
have thereby protested the court's ultimate disposition of the matter or
failure to rule or instruct accordingly sufficiently to raise a question of
law with respect to such disposition or failure regardless of whether any
actual protest thereto was registered." C.P.L. § 470.05(2).

independent finding by the Appellate Division that petitioner procedurally defaulted on his sentencing claim, petitioner would have to show in his habeas petition "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. He has not made the required showing and this claim is therefore precluded from habeas review.

### 5. Sufficiency of the Evidence

Petitioner concludes his petition alleging that the evidence was legally insufficient to support his conviction for intentional murder. Pet. ¶ 22(D), Ground Five. The Appellate Division rejected petitioner's contention on the merits. Price, 35 A.D.3d at 1231.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" Jackson v. Virginia, 443 U.S. 307, 315 (1979) (quoting In re Winship, 397 U.S. 358, 364 (1970)). Thus, under federal or New York state law, review of the legal sufficiency of trial evidence is governed by the same standard; the test is not whether the jury could have come to some other conclusion, but rather whether the evidence could persuade *any* rational jury (or fact-finder) that all the essential elements of the crime were proven beyond a reasonable doubt. Id.; see also

People v. Bleakley, 69 N.Y.2d 490, 495 (1987). As the Second Circuit has explained,

> [T]he standard for appellate review of an insufficiency claim places a "very heavy burden" on the appellant. Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. In making this determination, we must view the evidence in the light most favorable to the government, and construe all permissible inferences in its favor.

United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (citations omitted), cert. denied, 462 U.S. 1108 (1983). In making this assessment, the reviewing court may neither "disturb the jury's findings with respect to the witnesses' credibility," United States v. Roman, 870 F.2d 65, 71 (2d Cir. 1989), nor make its own "assessments of the weight of the evidence[.]," Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). Thus, under this standard, a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326).

On habeas review, the Jackson v. Virginia "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324

n.16; accord, e.g., Green v. Abrams, 984 F.2d 41, 44-45 (2d Cir.
1993) ("In considering a petition for a writ of habeas corpus based
on insufficient evidence to support a criminal conviction in the
state courts, a federal court must look to state law to determine
the elements of the crime.").

Based on a review of the record, the Court finds that a
rational juror could easily conclude from the evidence that
petitioner intentionally shot and killed Payne and Butler. "A
person is guilty of murder in the second degree when . . . [w]ith
intent to cause the death of another person, he causes the death of
such person or of a third person." N.Y. Penal L. § 125.25(1). The
proof at trial established that petitioner fired at least
8 gunshots in the same direction, with three bullets causing fatal
injuries to two victims a few feet apart from one another. The
bullets struck Payne in the head and chest, and another entered
Butler's head. Petitioner then left the scene and changed his
clothing at a friends house. He hid the gun and made arrangements
to have the gun disposed of. Petitioner subsequently gave multiple,
inconsistent statements to police, before finally acknowledging
that he was the shooter. Despite petitioner's own assertions that
he shot in self-defense, the Court is not free to second-guess the
jury's credibility determinations. See, e.g., Soto v. Lefevre, 651
F.Supp. 588, 592 (S.D.N.Y. 1986) (holding that federal habeas court

has no power to redetermine comparative credibility of conflicting eyewitness testimony).

In sum, Appellate Division's rejection of this claim was not contrary to, or an unreasonable application of <u>Jackson v. Virginia</u>, and habeas relief therefore does not lie for this ground.

## IV. Conclusion

For the reasons stated above, Archie Price's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
                    MICHAEL A. TELESCA
                    United States District Judge

Dated:    August 19, 2010
          Rochester, New York